# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MITCHELL BEAU SHED,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-383-RAW |
| | ) |
| **STATE OF OKLAHOMA** *ex rel* | ) |
| **Oklahoma Department of Human** | ) |
| **Services, et al.,** | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the court is the motion of defendants Tracy Murphy and Sommer Purdom to dismiss. This lawsuit commenced in the District Court for Muskogee County, when plaintiff filed his petition on June 27, 2016. The action was removed to this court and plaintiff filed an amended complaint on October 26, 2016. Plaintiff makes wide-ranging allegations against various defendants.

As pertinent to this motion, the amended complaint alleges as follows: Murphy is a former DHS employee (#26 at ¶3). Purdom was or is a DHS employee (¶4). On or about May 4, 2012, Murphy and law enforcement personnel came to plaintiff's home to "presumably" ask questions about potential abuse of plaintiff's female minor step-children. (¶17). On May 5, 2012, Murphy (without sufficient investigation) notified the Town of Haskell and a Haskell police officer that plaintiff was committing acts of sexual abuse

against children. (¶20). On or about May 7, 2012, Purdom interviewed the female minor children. No SANE (Sexual Assault Nurse Examiner) examination or physical examination of the children took place. The female minor child who was the focus of the investigation stated that plaintiff did not sexually abuse her. (¶22).

On or about May 9, 2012, plaintiff and his wife were interviewed separately by Murphy. (¶24). Murphy then had a brief meeting with plaintiff and his wife at which a "safety plan" was introduced and recommended for plaintiff to voluntarily remove himself from the residence and not have contact with his wife. (¶25). On or about May 17, 2012, a Haskell police officer (co-defendant Thomas) informed Murphy that additional investigation was necessary into the alleged criminal abuse charges against plaintiff. (¶29). Murphy took custody of the female minor children and placed them into temporary custody with Timothy Pickard, their biological father. Murphy had actual knowledge that Pickard was on probation for numerous criminal charges. This conduct violated DHS protocols and/or guidelines (¶33). Murphy filed a petition to remove custody of the female minor children based upon a violation of the "safety plan," a plan to which plaintiff had never agreed. The petition alleged that plaintiff had violated the safety plan on a date which had not yet occurred. (¶35). On or about June 6, 2012, Murphy filed an affidavit alleging that plaintiff's wife had allowed plaintiff into the home in violation of the proposed safety plan. This allegation is contradicted by the fact that plaintiff's wife was clocked in at work during the pertinent time. Murphy did nothing to investigate the truth of the matter. (¶37).

2

Murphy contacted a Muskogee County judge to grant an order removing minor children from the home because plaintiff's wife was exposing the children to sexual abuse. Murphy received such an emergency order despite no charges being filed against plaintiff's wife and no evidence that the safety plan had been violated. (¶38). On June 8, 2012, DHS seized custody of plaintiff's two young sons (i.e., the biological children of plaintiff and his wife). (¶39). An emergency custody hearing was held on June 11, 2012, at which Murphy materially misrepresented the nature of the safety plan and the violation of said plan. (¶40). On or about June 13, 2012, plaintiff was arrested for child sexual abuse. (¶42). He was acquitted of criminal charges in June, 2015. (¶47). Due to the actions of movants and others, one of the male minor children will no longer sleep at the home of plaintiff and his wife. (¶52). "DHS and its employees Murphy and Purdom put into motion a series of events which caused Plaintiff's arrest and prosecution. Plaintiff further alleges that the above parties also took actions which led to the disruption of Plaintiff's family environment and removal of Plaintiff's children from his home." (¶56).

Under Rule 12(b)(6), the court must assume the truth of plaintiff's well-pleaded factual allegations and view them in the light most favorable to plaintiff. *Ridge at Red Hawk, LLC v. Schneider,* 493 F.3d 1174, 1177 (10th Cir.2007). The issue is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id. (*quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Wilson v. Montano,* 715 F.3d 847, 852 (10th Cir.2013). "[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context. . . " *Robbins v. Oklahoma,* 519 F.3d 1242, 1248 (10th Cir.2008).

"The *Twombly* standard may have greater bite" in the context of a §1983 claim against individual government actors, because "they typically include complex claims against multiple defendants." *Id.* at 1249. "[I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1250.

The first claim against the movants is a §1983 claim for malicious prosecution in violation of the Fourth Amendment.[1] The Tenth Circuit recognizes such a cause of action. *See Sanchez v. Hartley,* 810 F.3d 750, 755 (10th Cir.2016), *cert. denied,* 2017 WL 1114967 (2017). The elements include the following: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

---

[1]"Section 1983 creates no substantive rights, but rather creates only a remedy against those who, acting under color of law, violate rights secured by federal statutory or constitutional law." *Ramirez v. Dep't of Corr., Colo.,* 222 F.3d 1238, 1243 (10th Cir.2000).

*Id.* at 754 n.1 (internal quotation marks omitted).[2]

The court concludes the first claim fails under the applicable standard. The allegations in the amended complaint do not establish either elements (1) or (4) as to Purdom. As for Murphy, a defendant might be said – in an attenuated fashion – to have "caused" a prosecution by providing false information to a police officer.[3] Here, however, a break in any causative chain appears in ¶29, when the police officer told Murphy that additional investigation was necessary. It is alleged that the police officer ultimately provided information to charging authorities. (¶¶23 & 30). The paragraph describing plaintiff's arrest (¶42) is written in the passive voice. The court cannot reasonably infer that Murphy "caused" the prosecution. Also, the amended complaint does not allege the third element, i.e., that the prosecution lacked probable cause. The present motion is granted as to the first claim.

In the alternative, movants assert qualified immunity as to this claim.[4] "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Keith v.*

---

[2] Under Rule 12(b)(6), plaintiff is not required to establish a prima facie case in the complaint, but the elements help to determine whether a plausible claim has been set forth. *See Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir.2012).

[3] *See Denithorne v. Ingemie,* 2016 WL 724941, *3 (E.D.Penn.2016).

[4] "A qualified immunity defense is only available to parties sued in their individual capacity." *Beedle v. Wilson,* 422 F.3d 1059, 1069 (10th Cir.2005). The amended complaint states movants are sued in their individual capacities.

*Koerner,* 707 F.3d 1185, 1188 (10th Cir.2013). Because this court has found that the complaint fails to plausibly allege the violation of a constitutional right, movants are entitled to qualified immunity.

The second claim is also malicious prosecution, but based upon the Oklahoma Constitution, specifically Art. 2, Section 30.[5] Plaintiff relies on *Bosh v. Cherokee County Building Authority,* 305 P.3d 994 (Okla.2013), in which the Oklahoma Supreme Court recognized a private right of action under this provision of the Oklahoma Constitution for excessive-force claims by inmates. *Id.* at 1001. No authority has extended a *Bosh* claim to malicious prosecution, but the court need not resolve this issue, because this claim should be dismissed on other grounds.

First, *Bosh* claims appear to be limited to actions against political subdivisions. "Plaintiff points to no legal authority that permits a *Bosh* claim against an individual actor. . . . " *Maher v. Oklahoma,* 165 F.Supp.3d 1089 n.3 (W.D.Okla.2016). Second, even if brought under the Oklahoma Constitution, a malicious prosecution cause of action must have essential elements, which will be similar to the ones already articulated. The court has already found that the amended complaint has not plausibly alleged those elements. Accordingly, the motion is also granted as to the second claim.

---

[5]Oklahoma law already recognizes a claim for malicious prosecution, with elements roughly similar to those already recited. *See Meyers v. Ideal Basic Indus., Inc.,* 940 F.2d 1379, 1383 (10th Cir.1991). Such actions are "disfavored by Oklahoma courts, and the elements of the action are narrowly construed." *Id.* Perhaps to avoid the obstacles presented by the Oklahoma Governmental Tort Claims Act, plaintiff proceeds under *Bosh*.

Next, plaintiff asserts another federal claim pursuant to 42 U.S.C. §1983 for violation of the Fourteenth Amendment, specifically familial interference. The right to familial association has long been recognized as a "subset" of the freedom of intimate association. *Zane v. Kramer,* 195 F.Supp.3d 1243, 1251 (W.D.Okla.2016)(citing *Griffin v. Strong,* 983 F.2d 1544, 1547 (10th Cir.1993)). The government's forced separation of parent from child, even for a short time, represents a serious impingement on a parent's right to familial association. *Id.* (quoting *Thomas v. Kaven,* 765 F.3d 1183, 1195 (10th Cir.2014). The right is not absolute, however, but must be weighed against the state's interest in protecting a child's health and safety in order to determine whether state actors unduly burdened that right in a given case. *Id.* (quoting *Thomas,* 765 F.3d at 1196.).

To establish a claim for deprivation of the right of familial association, plaintiff must prove (or for purposes of the present motion, allege)[6] that (1) defendant intended to deprive him of his protected relationship with his children and that (2) balancing plaintiff's interest in his protected relationship with his children against the state's interest in the children's health and safety, defendant either unduly burdened plaintiff's protected relationship, or effected an unwarranted intrusion into that relationship. *Id.* (quoting *Thomas,* 765 F.3d at 1196).

In this regard, the amended complaint alleges in a summary paragraph that "Murphy and Purdom submitted information to law enforcement officer Thomas and district court for

---

[6]The *Zane* decision involved a motion for summary judgment.

purposes of securing the removal of Plaintiff's children despite knowledge that the information they were providing was either materially misleading, inaccurate, or unsubstantiated by a lack of investigation." (¶68). Generally, the "[m]ere investigation by authorities into child abuse allegations *without more* . . . does not infringe upon a parent's right to custody or control of a child" and "the right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." *Kottmyer v. Maas,* 436 F.3d 684, 691 (6th Cir.2006)(emphasis added).

This principle is sufficient to dismiss this claim as to Purdom. Despite the summary paragraph, the amended complaint only alleges that Purdom conducted an interview with the female minor children on or about May 7, 2012. (¶22). The same paragraph alleges that the interview took place with no SANE examination or physical examination. Viewed most favorably to plaintiff, this might indicate a degree of negligence on Purdom's part, but not (standing alone) that Purdom intended to deprive plaintiff of his protected relationship with his children. It also does not demonstrate an undue burden or unwarranted intrusion regarding that relationship. No DHS regulation has been cited regarding timing of physical examinations, and they well could have been contemplated for a later time. Also, no causative link has been alleged between Purdom's interview and subsequent events. Necessarily, Purdom is also entitled to qualified immunity, in that plaintiff has not made out that she violated a constitutional right of plaintiff's.

As to Murphy, however, the allegations are more detailed. It is alleged that Murphy

"filed a petition to remove custody of the female minor children" (¶35), that she filed an affidavit alleging plaintiff's wife violated the safety plan (¶37), and that Murphy sought and received an emergency order to take all children out of the Shed home. (¶38).[7] The court finds that the amended complaint plausibly alleges a claim for familial interference against Murphy. Also, the case law previously cited demonstrates that this right is clearly established. Therefore, the court would deny Murphy qualified immunity in the present context.[8]

Nevertheless, the claim against Murphy will be dismissed based upon movants' alternative ground that it is time-barred. (#38 at 13). In Oklahoma, the statute of limitations applicable to Section 1983 claims is the two-year statute of limitations set forth in 12 O.S. §95(A)(3). *McClellan v. City of Nowata,* 2015 WL 75074, *4 (N.D.Okla.2015); *Meade v. Grubbs,* 841 F.2d 1512, 1522 (10th Cir.1988). Murphy's alleged conduct took place in 2012. The present lawsuit was not filed until June, 2016. Generally, a §1983 claim "accrue[s] when [plaintiff] knew or should have known that his constitutional rights had allegedly been violated." *Parkhurst v. Lampert,* 264 Fed.Appx. 748, 749 (10th Cir.2008).

Finally, plaintiff asserts against movants a claim for familial interference as a direct violation of the Oklahoma Constitution, specifically Art. 2, Section 7 (due process). There

---

[7] Movants assert that these allegations are "simply incorrect" (#38 at 2), but such a factual dispute cannot be resolved in the context of a Rule 12(b)(6) motion.

[8] "[T]he denial of qualified immunity at the dismissal stage does not preclude a renewal of that defense at summary judgment after further factual development has occurred." *Weise v. Casper,* 507 F.3d 1260, 1265 (10th Cir.2007).

is a split of district court authority over recognition of such a claim. *Compare Koch v. Juber,* 2014 WL 2171753, *3 (W.D.Okla.2014)(*Bosh* does not extend to due process violations) with *Halley v. Oklahoma ex rel. Oklahoma State Dep't of Human Servs.,* 2016 WL 1301125, *4 (E.D.Okla.2016)(*Bosh* extends to due process claims under Article II, Section 7 of the Oklahoma Constitution). The court need not answer the question to resolve the present motion, because as previously stated no authority holds that *Bosh* permits a claim against an individual. Dismissal is appropriate.

It is the order of the court that the motion to dismiss (#38) is hereby granted. Tracy Murphy and Sommer Purdom are terminated as party defendants.

**IT IS SO ORDERED** this 25th day of APRIL, 2017.

Ronald A. White
United States District Judge
Eastern District of Oklahoma